NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

———————————

**CHINA MANUFACTURERS ALLIANCE, LLC, DOUBLE COIN HOLDINGS LTD.,**
*Plaintiffs-Appellants*

**GUIZHOU TYRE CO., LTD., GUIZHOU TYRE IMPORT AND EXPORT CO., LTD.,**
*Plaintiffs*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

———————————

2023-2391

———————————

Appeal from the United States Court of International Trade in Nos. 1:15-cv-00124-TCS, 1:15-cv-00128-TCS, Senior Judge Timothy C. Stanceu.

———————————

Decided:  April 28, 2025

———————————

JAMES P. DURLING, Pillsbury Winthrop Shaw Pittman LLP, Washington, DC, argued for plaintiffs-appellants. Also represented by DANIEL L. PORTER, WILLIAM C. SJOBERG; ANA MARIA AMADOR GIL, Curtis, Mallet-Prevost, Colt & Mosle LLP, New York, NY.

STEPHEN CARL TOSINI, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by BRIAN M. BOYNTON, PATRICIA M. MCCARTHY, FRANKLIN E. WHITE, JR.; HENDRICKS VIDAL VALENZUELA SANDOVAL, Office of the Chief Counsel for Trade Enforcement & Compliance, United States Department of Commerce, Washington, DC.

———————————

Before TARANTO, CLEVENGER, and HUGHES, *Circuit Judges*.

TARANTO, *Circuit Judge*.

Based on the United States Department of Commerce's 2008 antidumping-duty order covering certain pneumatic off-the-road tires from the People's Republic of China (PRC), Commerce in November 2013 initiated an administrative review, under 19 U.S.C. § 1675, of merchandise that was subject to the 2008 order and entered the United States between September 1, 2012, and August 31, 2013 (the 2012–2013 review). *Initiation of Antidumping and Countervailing Duty Administrative Reviews and Request for Revocation in Part*, 78 Fed. Reg. 67104 (Nov. 8, 2013). In that review, Commerce followed its now-longstanding practice of both presuming that each exporter of merchandise from the "non-market economy" of the PRC is subject to the PRC government's control and assigning a PRC-wide antidumping-duty rate to any exporter that fails to carry the burden of persuasion to show its independence from government control sufficient to entitle the exporter to its own separate rate. *Id.* at 67104–105. As we recently confirmed, we have repeatedly approved that practice. *Pirelli Tyre Co., Ltd. v. United States*, 128 F.4th 1265, 1268 (Fed. Cir. 2025).

In the 2012–2013 review, Commerce determined that Double Coin Holdings Ltd. (Double Coin), an exporter of the subject merchandise, "failed to demonstrate absence of *de facto* government control" because its controlling (indeed, majority) shareholder was wholly owned by a PRC government agency and wields a "significant level of control" over its board of directors. *Certain New Pneumatic Off-the-Road Tires From the People's Republic of China: Final Results of Antidumping Duty Administrative Review; 2012–2013*, 80 Fed. Reg. 20197, 20199 (Apr. 15, 2015) (*Final Results*), as amended by *Certain New Pneumatic Off-the-Road Tires From the People's Republic of China: Amended Final Results of Antidumping Duty Administrative Review; 2012–2013*, 80 Fed. Reg. 26230 (May 7, 2015). Commerce therefore assigned Double Coin the PRC-wide entity rate. *Final Results*, 80 Fed. Reg. at 20199.

Both Double Coin and its United States importer of the subject merchandise, China Manufacturers Alliance, LLC (CMA), challenged the final results. In 2021, we agreed with the government's argument that Commerce was statutorily authorized to assign Double Coin the PRC-wide entity rate. *China Manufacturers Alliance, LLC v. United States*, 1 F.4th 1028, 1039–40 (Fed. Cir. 2021) (*CMA 2021*). Thus, we reversed the contrary final judgment of the United States Court of International Trade (Trade Court) and remanded. *Id.* at 1040.

On remand, the Trade Court upheld, as supported by substantial evidence, Commerce's determination that Double Coin failed to demonstrate lack of government control. *China Manufacturers Alliance, LLC v. United States*, 639 F. Supp. 3d 1260, 1264–68 (Ct. Int'l Trade 2023) (*CMA 2023*). The Trade Court entered final judgment sustaining Commerce's assignment of the PRC-wide entity rate to Double Coin, and CMA and Double Coin (appellants) timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(5).

"We review Commerce's decision using the same standard of review applied by the Trade Court, while carefully considering that court's analysis." *Mid Continent Steel & Wire, Inc. v. United States*, 941 F.3d 530, 537 (Fed. Cir. 2019) (citation omitted). We will uphold Commerce's determination here unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i).

At oral argument in this court, appellants stated that the legal arguments presented in their brief could not prevail in light of *Pirelli Tyre*, decided by this court after the briefing was complete in this case. Oral Arg. at 0:28–1:03, https://oralarguments.cafc.uscourts.gov/default.aspx?fl=23 -2391_04072025.mp3; *see Pirelli Tyre*, 128 F.4th at 1268, 1270. Thus, the only challenge we need to address here is appellants' contention that substantial evidence does not support Commerce's finding that Double Coin failed to show lack of de facto government control. *See* Appellants' Br. at 39–67. We reject that challenge on its merits and therefore need not address the government's argument that appellants' substantial-evidence challenge is foreclosed by our 2021 decision. Government's Br. at 16–20.

Commerce found that the Huayi Group, which is 100% owned by a PRC government agency and is the majority-owner of Double Coin, "exerts considerable influence over [Double Coin's] board of directors (and, thus, the management and operations of [Double Coin])" and that "the factual record does not provide sufficient information to rebut the presumption of government control." *Issues and Decision Memorandum for Final Results of Antidumping Duty Administrative Review: Certain New Pneumatic Off-the-Road Tires from the People's Republic of China; 2012-2013* at 14, 18 (Dep't of Commerce Apr. 8, 2015) (*Final Decision Memo*). Commerce noted that, in light of then-recent antidumping-duty proceedings, the majority ownership sufficed "in and of itself" to resolve the issue. *Decision Memorandum for Preliminary Results of Antidumping*

*Duty Administrative Review: Certain New Pneumatic Off-the-Road Tires from the People's Republic of China; 2012-2013* at 8–10 & nn.37–38 (Dep't of Commerce Sept. 30, 2014) (citations omitted) (*Preliminary Decision Memo*); *see also Final Decision Memo* at 18.[1] But Commerce nevertheless proceeded to recite ample additional bases for its finding, including the following: (1) Huayi controlled the composition of Double Coin's board, as a minority shareholder had never nominated a director and a Huayi nominee had never been rejected; (2) even if Double Coin's Articles of Association and company documents stated that managers control day-to-day operations, Huayi controlled management through board-controlled pay; (3) the "Articles of Association demonstrate[d] that a majority shareholder – and particularly one [like Huayi] with 65.66 percent ownership – ha[d] near complete control over any shareholder decision[]," including those which "may affect the management and operations of the company";

---

[1]    In *Zhejiang Machinery Import & Export Corp. v. United States*, 65 F.4th 1364, 1370 (Fed. Cir. 2023), we explained: "As the CIT has noted, '[w]here a majority shareholder has potential control[,] that control is, for all intents and purposes, actual control.' *An Giang Fisheries Imp. & Exp. Joint Stock Co. v. United States*, 284 F. Supp. 3d 1350, 1359 (Ct. Int'l Trade 2018)." *See also CMA 2023*, 639 F. Supp. 3d at 1265–66; *Can Tho Import-Export Joint Stock Company v. United States*, 435 F. Supp. 3d 1300, 1305–06 (Ct. Int'l Trade 2020); *An Giang Fisheries*, 284 F. Supp. 3d at 1357–59 & n.9. More recently, Commerce adopted 19 C.F.R. § 351.108, which states that "[n]o separate rate will be applied when the nonmarket economy government either directly or indirectly holds . . . [a] majority ownership share." *Regulations Enhancing the Administration of the Antidumping and Countervailing Duty Trade Remedy Laws*, 89 Fed. Reg. 101694, 101699–705, 101758–60 (Dec. 16, 2024); 19 C.F.R. § 351.108(b)(1)(i).

(4) although "certain minority shareholder rights" (*e.g.*, "the ability to bring suit against a board member or manager who acts against the interests of the company," "to call a shareholder meeting," and to hold votes after "recusal of Huayi's voting shares") existed, there was no evidence that those rights were exercised; and (5) the fact that CMA set U.S. sales prices did not negate government control over factors (*e.g.*, "governmental manipulation of the costs of inputs") that could affect such prices and, thus, export activity. *Id.* at 15–18 & nn.54–58 (internal quotations and citations omitted); *see also* J.A. 2976; J.A. 3015–17 & n.33.

Appellants argue that Commerce ignored evidence. Appellants' Br. at 39–41. But the duty to consider all the evidence on the record "does not necessitate explicit mention and discussion of each piece of evidence." *Pirelli Tyre*, 128 F.4th at 1271 (citations omitted). We see no basis for doubt that Commerce considered the entirety of the record in making its finding. In particular, appellants have not identified evidence that is so contrary to Commerce's determination, applying the legal standards it did (which are no longer challenged here, after *Pirelli Tyre*), that Commerce must have ignored it rather than merely found it unpersuasive in light of the expressly recited evidence.

For the foregoing reasons, we affirm the Trade Court's decision.

**AFFIRMED**